The Musical Mutual Protective Union, Plaintiff, *v.* Joseph N. Weber, Individually and as President of the American Federation of Musicians, and Others, Defendants.

Supreme Court, New York County, April 1, 1924.

**Injunctions — action to compel reinstatement of local union and to enjoin defendants from various acts deemed to interfere with purposes and objects of plaintiff — suspension of plaintiff union following violation of rules and regulations of defendant national organization — legal and reasonable methods employed by defendant in suspending plaintiff — injunction denied and complaint dismissed.**

In an action to reinstate the plaintiff local union in the national organization, and to enjoin said organization from certain acts deemed to interfere with the purposes and objects of the plaintiff, the complaint will be dismissed and the injunction denied, where it appears that there was nothing illegal or unreasonable in the method employed by the defendant national organization in attempting to enforce its by-laws by suspending the plaintiff union after the latter had violated rules and regulations of the national organization; that there was no evidence of any illegal conspiracy upon the part of defendants at the hearing and trial of the plaintiff union; and that the suspension of the plaintiff did not illegally deprive the great mass of its members of the opportunity to earn their livelihood or injure the real estate of the plaintiff.

Action to reinstate a local union and for an injunction.

*Fitzgerald, Stapleton & Mahon* (*Louis Kunen* of counsel), for the plaintiff.

*Samuel Seabury*, for the defendants Canavan, Schroeder and Rauch.

*Charles L. Hoffman* and *Henry A. Friedman*, for the defendants Weber, Finkelstein, Kerngood and American Federation of Musicians.

Black, J.   The findings bring out practically every point insisted upon by both sides to this litigation, but the following brief memorandum sets out some of the outstanding facts they may not

cover. This is an action by the Musical Protective Union against the officers of the American Federation of Musicians, and the secretary of the governing board of Local 802, and against Samuel Finkelstein, William J. Kerngood, Edward Canavan, George Schroeder and Maurice Rauch, individually, to reinstate Local 310 and cause it to be again affiliated with the American Federation of Musicians, and to enjoin defendants from coercing, compelling, intimidating, inducing, or attempting to coerce, compel, intimidate or induce, any employer or bandmaster not to employ or to dismiss members of plaintiff in good standing because they are not union men or are not members of the American Federation of Musicians or are not members of Local 802, or to enjoin defendants from preventing members of the American Federation of Musicians or Associated Musicians of Greater New York, Local 802, from working, and to enjoin them from interfering with any employer or bandmaster because he has given employment to members of plaintiff, whether such member is a member of the Associated Musicians of Greater New York or the American Federation of Musicians, Local 802. Plaintiff seeks further to enjoin defendants " to recall or cancel any charter granted by the American Federation of Musicians to Local 802 " and to enjoin them from recognizing Local 802 or recognizing its officers, Edward Canavan, its president, or any other organization affiliated with the American Federation of Musicians in the territory heretofore occupied by the plaintiff, and plaintiff seeks to enjoin defendants to cancel and revoke all cards or *indicia* of membership in any local of the American Federation except plaintiff, Local 310, and to compel the officers of Local 802 to surrender any charter outstanding issued by the American Federation of Musicians, and that they be restrained from interfering with the purposes and objects of plaintiff Local 310 or their members. And plaintiff asks that it be decreed that Local 802 has no lawful existence as a member of the American Federation of Musicians, and that any act suspending or purporting to suspend plaintiff " be as of no legal force or effect, and that plaintiff and its members are entitled to recognition by the American Federation of Musicians and its officers," and that plaintiff's members be reinstated " into all benefits, rights and privileges and immunities theretofore enjoyed by it and them and each of them in affiliation with the American Federation of Musicians and the American Federation of Labor," and that Local 802 or any of its members have no standing in the American Federation of Musicians independent of membership in Local 310, and that the suspension of plaintiff be decreed to be null, void and illegal and rescinded, as without warrant of law, and that defendants be restrained from coercing or attempting to

coerce any employer or bandmaster not to employ or to dismiss from his employment members of plaintiff in good standing for the reason that " said member of plaintiff is not a union man or not affiliated with the American Federation of Musicians or with the Associated Musicians of Greater New York, Local 802, or with the American Federation of Labor," or that defendants be restrained from issuing any notice or communication representing that any member of the plaintiff is not a member in good standing of the American Federation of Musicians, " or that by reason thereof such employer will suffer or is likely to suffer loss, trouble or difficulty by reason of employing such persons," or that such employer or bandmaster will be placed on an unfair list, and that other employees will be withdrawn from his employ, and that defendants be enjoined from disciplining, punishing or discriminating against any employer or bandmaster because he has given employment to a member of plaintiff in good standing. In June, 1920, or a little earlier, a wage controversy arose between musicians who were members of plaintiff and the theatres in which they played. These theatres were so-called legitimate houses and " two-a-day " houses. The controversy between the legitimates and their employees was settled by a fifty per cent increase, but the musicians in the two-a-day houses (through their negotiation committees) had been unable to agree with the theatrical managers as to wages. The two-a-day managers and plaintiff could not agree. The plaintiff had refused further negotiation with them, and the managers appealed to the national body, the American Federation of Musicians, under article XI of its by-laws, to intervene and compose the differences. The American Federation of Musicians brought about a settlement at a forty per cent raise. This was ratified by plaintiff at a members' meeting under protest. The settlement at forty per cent increase for the two-a-day men was bitterly opposed by one element of the membership of plaintiff 310, and this element organized what was called the Quorum Club, whose object was to fight those who had favored the settlement which gave the two-a-day men the forty per cent increase. At a meeting thereafter the president, Finkelstein, appointed Nicholas Mulieri and C. B. Wilson sergeants-at-arms, the by-laws providing that these shall be appointed by the president, with the consent of the board of directors. Finkelstein also appointed an attorney, Thomas C. Press, who was then acting as attorney of 310, but he was not satisfactory to the majority of the board of directors. This majority, of whom Kunze, Matera, Donnelly, Rosenthal, A. G. Sharpe, A. Sonkin, Etzel and Leo Shapiro were members of the Quorum Club, had agreed upon Jacob J. Schwebel as attorney for

the Local 310, but Finkelstein refused to recognize him, and there was a deadlock between the majority of the directors and the president. The directors of plaintiff at a meeting suspended President Finkelstein. Finkelstein appealed under the by-laws of the American Federation of Musicians to the president of the American Federation of Musicians for a stay of the judgment suspending him, which was granted. The directors of plaintiff (the majority of whom were members of the Quorum Club) refused to recognize the stay of suspension of Finkelstein. Thereafter defendant Weber, president of the federation, suspended the eight Quorum Club directors as members of the federation, giving as a reason their refusal to recognize the stay of suspension granted to Finkelstein by Weber. The directors were afterwards reinstated by order of the Supreme Court, the learned justice before whom the hearing was held deciding that the American Federation of Musicians had no right to interfere with the internal control of Local 310. Thereafter, on the 27th day of August, 1921, Local 802 was organized by the American Federation of Musicians under a so-called commission form of government, providing that its officers should be nominated by or be satisfactory to the American Federation of Musicians. Local 802 was organized by men, many of whom were members of the plaintiff. At first an application was presented to the American Federation of Musicians, but as there were only some 64 names the applicants were told to go and get more names, which they did, returning afterwards with 1,180 printed applications, which set forth the terms upon which they wished to be chartered as a local in New York city by the American Federation of Musicians. It appears that plaintiff Local 310 recognized the organization of 802 and passed a resolution allowing its members to join 802 without prejudice. About June 1, 1921, plaintiff resolved not to receive certain transfer cards and not to issue certain membership cards, and caused all applications for such cards to be referred to its board of directors for investigation. During June, 1921, members of the American Federation of Musicians presented membership cards from other locals to plaintiff Local 310 and asked that those cards be recognized by Local 310 and that it issue them local membership cards. This, plaintiff refused to do. These four members then filed charges against plaintiff 310 for violating section 4 of article 12 of the laws of the American Federation of Musicians. Plaintiff was notified by the secretary of the American Federation of Musicians of hearing these charges by letter of June 28, 1921. The hearing was set for July 7, 1921, at ten-thirty. The notice was admittedly received by plaintiff. Defendant, on the 5th day of July, 1921, replied to this notice, say-

ing the American Federation of Musicians' charges were inspired by malicious motives and were not preferred in good faith and that no transfer cards had been refused except for good and sufficient reason.   Plaintiff asked for postponement of the hearing, claiming that the time set did not give them sufficient time within which to prepare their defense.   To this defendant American Federation of Musicians did not reply.   At the time and place set in the notice, to wit, July 7, 1921, plaintiff did not appear, and the executive board of defendant American Federation of Musicians at this special meeting considered the request for adjournment and denied the request.   It then took up the hearing and heard three of the four complainants, and afterwards found plaintiff guilty as charged and passed a resolution suspending plaintiff 310.   A motion was then regularly carried that Acting President Mayer be instructed in accordance with section 2 of article 4 of the by-laws of the federation to suspend Local 310 from membership in the federation and that he so advise Local 310 and that he be instructed to make demand upon plaintiff for the return of the charter, the federation seal and other property of the federation.   Neither the by-laws of the American Federation of Musicians nor of plaintiff provide for an appeal from this action, but nevertheless, more than eight months thereafter, plaintiff did, on May 8, 1922, appeal to the national convention of the defendant American Federation of Musicians from the decision of the executive board suspending plaintiff 310. At the convention appeared Anthony Mulieri, Morris Benevente and Abraham Nussbaum, representing plaintiff, and Richard L. Halle and Samuel Finkelstein, representing Local 802.   They set out to the convention the entire situation that brought about the suspension of Local 310.   After these speeches the convention passed the following resolution:

"Whereas a communication has been received bearing date April 27, 1922, addressed to Mr. William J. Kerngood, 3535 Pine street, St. Louis, Missouri, upon a letterhead bearing the name Musical Mutual Protective Union, Local 310, A. F. of M., which said communication has imprinted thereon a seal bearing the following: 'Musical Mutual Protective Union, Greater New York, American Federation of Musicians, 310, A. F. of L.,' which communication also states that there is inclosed therein 'Appeal of the Musical Mutual Protective Union, Local 310, A. F. of M.;' and

"Whereas such enclosure consists of a printed pamphlet entitled: 'In the matter of the appeal of the Musical Mutual Protective Union, Local 310, A. F. of M.;' and

"Whereas there is no local of musicians of the American Federation of Musicians No. 310 in existence and no organization

of musicians is authorized to or has the right to be known as Local 310, A. F. of M.; therefore be it

"*Resolved* that the use in said communication and enclosure of 'Local 310, A. F. of M. and A. F. of L.' is disapproved and the said communication and enclosure have been treated and recognized only as an appeal made by Musical Mutual Protective Union (formerly Local 310, A. F. of M.); and

"WHEREAS the convention is satisfied of the propriety of the action of the executive board of the American Federation of Musicians in adjudging the Musical Mutual Protective Union (formerly Local 310, A. F. of M.) guilty of the charges made against said Musical Mutual Protective Union (formerly Local 310, A. F. of M.); and

"WHEREAS the convention deems the appeal presented by the Musical Mutual Protective Union as without merit; therefore be it

"*Resolved* that the appeal so presented be and the same hereby is disallowed, and that the action and proceedings heretofore taken by the American Federation of Musicians, through its officers and executive board, adjudging the said Musical Mutual Protective Union (formerly known as Local 310, A. F. of M.) as being guilty of the charges preferred against it and suspending said local, be and the same hereby are approved and confirmed."

The plaintiff acquiesced in the decision of the convention, took off their stationery the references to its affiliation with the American Federation of Musicians, passed a resolution reciting its expulsion and gave its consent that its members should join Local 802, and negotiated with Local 802 for the payment by it of rent to plaintiff for the use of plaintiff's building. Both before and after this action of the American Federation of Musicians members of the plaintiff Local 310 and other musicians joined 802, until to-day 802 has some 12,000 members. I have detailed the events preceding the charges for refusing the transfer cards, not because I think they throw any light upon that episode, but because plaintiff claims that they show a conspiracy finally culminating in the charges regarding refusal of transfer cards, and that the charges regarding refusal of transfer cards were trumped up in pursuance of the alleged conspiracy to deprive Local 310 of its affiliation with the American Federation of Musicians so that the American Federation of Musicians could operate through Local 802, which it absolutely controlled. I do not believe there was proved at the trial any illegal conspiracy by defendants. This belief is greatly strengthened by the fact that the acts complained of were acquiesced in by some of the very members who are named officers of plaintiff. Indeed, they were

elected on a Local 310 ticket opposed to the members of the Quorum Club. I am of opinion that the notice of the hearing upon the charges for refusing transfer cards to the four musicians was sufficient to give plaintiff time within which to prepare and present their defense, and if there was any reason why more time was required than that given plaintiff, plaintiff should have set it out in its reply to the notice of the hearing upon the charges. There are in evidence notices served by the plaintiff upon persons charged with infractions of its rules which give no more time; in fact, much less than that allowed by the American Federation of Musicians to plaintiff upon the hearing of the charges regarding transfer cards. At the hearing upon these charges no one appeared for plaintiff, and upon the evidence presented defendant American Federation of Musicians Executive Committee could not have found otherwise than it did. Plaintiff was entitled to no appeal to the National Convention of American Federation of Musicians, but nevertheless an appeal was made eight months after, and, as already stated, the action of the executive committee of defendant American Federation of Musicians was approved. I believe that: 1. Every local incorporated under the laws of New York has a perfect right to govern its own internal affairs, as so aptly decided by Mr. Justice Smith. 2. If a local such as 310 becomes affiliated with the national body, the American Federation of Musicians, the charter granted by the American Federation of Musicians becomes a contract with the local, and if the local wishes to avail itself of the advantages of the national body it must obey the rules of the national body. 3. It can violate these rules by a majority vote of its organization. 4. But if it does violate such rules it incurs the penalties prescribed by the by-laws of the American Federation of Muscians. 5. One of these by-laws authorized the suspension of Local 310 by the executive committee of the American Federation of Musicians. 6. In the attempted enforcement of the by-laws of the American Federation of Musicians the method of procedure must be regular and legal. 7. There was nothing illegal or unreasonable in the method employed by the American Federation of Musicians in attempting to enforce its by-laws by suspending Local 310. 8. The suspension of plaintiff Local 310 did not illegally deprive the great mass of its members of the opportunity to earn their livelihood, because with but few exceptions they were permitted to and did join 802, and because other positions as musicians are open to musicians not members of any organization. 9. I do not believe that the action of defendant has illegally injured or will illegally injure the real estate of the plaintiff. It may well be that its value as the home of a local musical union is not as great as before

the American Federation of Musicians severed its relations with Local 310, but plaintiff cannot be heard to claim that this result is attributable to defendants when the evidence shows that plaintiff violated the rules of the American Federation of Musicians. I think the application for injunction should be denied and the complaint dismissed, because plaintiff has not sustained the allegations of the complaint. The complaint is dismissed upon the merits, with costs to defendants, and $1,000 extra allowance is awarded to the defendant Local 802 and $1,000 extra allowance to defendant American Federation of Musicians. Decision and judgment signed. Findings passed upon.

Judgment accordingly.